UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

CHARMA L. BARNARD                                                                    PLAINTIFF

V.                                           No. 3:21-CV-73-JTR

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration[1]                                                    DEFENDANT

## ORDER

### I.  Introduction

On April 12, 2017, Plaintiff, Charma L. Barnard ("Barnard"), applied for disability income benefits and supplemental security income, alleging disability beginning on January 1, 2009. (Tr. at 24). In a written decision dated November 13, 2018, an Administrative Law Judge ("ALJ") denied her application. (Tr. at 33). The Appeals Council denied Barnard's request for review on April 26, 2019, making the ALJ's denial of Barnard's application for benefits the final decision of the Commissioner. (Tr. at 1008–1014).

Barnard filed a complaint in this Court on June 10, 2019, seeking to reverse and remand the ALJ's decision. (Tr. at 1015–1048). On May 27, 2020, the Court reversed and remanded the case for further consideration of Barnard's chronic headaches. (Tr. at 1049–1054).

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

A second hearing was held before a new ALJ on December 1, 2020. (Tr. at 894). At that hearing, Barnard amended her alleged onset date to December 1, 2011. *Id*. In a written decision dated February 2, 2021, the ALJ denied Barnard's application for benefits. (Tr. at 913). Barnard did not file a request for review with the Appeals Council, but instead filed her Complaint in this Court on April 16, 2021, challenging the ALJ's decision. (Doc. No. 2).

For the reasons stated below, the Court [2] affirms the decision of the Commissioner.

## II.  The Commissioner's Decision

The ALJ found that Barnard had not engaged in substantial gainful activity since the amended alleged onset date of December 1, 2011.[3] (Tr. at 897). The ALJ found, at Step Two, that Barnard had the following severe impairments: headaches,[4] lumbar spine spondylosis, asthma, chronic obstructive pulmonary disease, major

---

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

[3] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

[4] The ALJ complied with the District Court remand order to classify headaches as a severe impairment.

depressive disorder, posttraumatic stress disorder, generalized anxiety disorder, and substance abuse disorder, in remission. *Id*.

After finding that Barnard's impairments did not meet or equal a listed impairment (Tr. at 898–902), the ALJ determined that Barnard had the residual functional capacity ("RFC") to perform work at the light exertional level, with the following additional limitations: (1) the work does not require the climbing of ladders, ropes, or scaffolds; (2) the work involves no more than occasionally climbing of ramps or stairs, and no more than only occasionally having to balance, stoop, kneel, crouch, or crawl; (3) she can have no exposure to concentrated fumes, odors, or gases; (4) she cannot work offsite away from restroom facilities; (5) she is limited to simple routine, and repetitive task jobs, where supervision is simple, direct and concrete; and (6) she is limited to work where reasoning levels do not exceed 2, and where no interaction with the public is required.[5] (Tr. at 903).

At Step Four, the ALJ determined that Barnard was unable to perform any past relevant work. (Tr. at 911). At Step Five, the ALJ relied upon Vocational Expert ("VE") testimony to find that, based on Barnard's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could

---

[5] Reasoning levels describe the mental functioning required of prospective jobs in the Dictionary of Occupational Titles. *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010).

3

perform, including positions such as power screwdriver operator and price marker. Tr. at 912–913). Therefore, the ALJ concluded that Barnard was not disabled. *Id*.

### III. Discussion:

**A. Standard of Review**

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant

4

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

### B. Barnard's Arguments on Appeal

Barnard contends that the evidence supporting the ALJ's decision to deny her application for benefits is less than substantial. Her sole argument is that the ALJ did not properly analyze her subjective complaints.

Barnard alleged she suffered from back, shoulder, and leg pain, as well as generalized joint pain. Lumbar and thoracic imaging studies showed no more than mild spondylosis, foraminal narrowing, and degenerative disease. (Tr. at 708, 1321). An ANA test for rheumatoid arthritis was negative.[6] (Tr. at 848). Barnard said that Gabapentin was moderately effective for pain. (Tr. at 785, 838). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

---

[6] An ANA test is used to detect autoimmune disease such as lupus, rheumatoid arthritis or scleroderma. *Wygle v. Saul*, No. 18-CV-3049-LTS, 2020 WL 3120352, at *8 (N.D. Iowa Feb. 27, 2020), report and recommendation adopted, 2020 WL 1286211 (N.D. Iowa Mar. 18, 2020) (citing the Mayo Clinic website).

5

Barnard's doctor recommended that Barnard walk for exercise, and suggested that she attend physical therapy, because "staying active and working is in the best interest of the patient." (Tr. at 1322–1323). A physician's recommendation to exercise suggests that a claimant has an increased functional capacity. *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009). Musculoskeletal examinations showed some tenderness, but Barnard generally displayed good range of motion in her extremities. (Tr. at 1346–1361). On numerous occasions, she had 5/5 muscle strength and a steady gait. *Id*. While she alleged her pain was debilitating, Barnard also said she could do things like cook, wash dishes, clean house, do laundry, and shop in stores, with some assistance. (Tr. at 1259–1260). Such daily activities undermine her claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

Barnard also alleged that she suffered from disabling headaches, but a brain MRI was grossly normal and Barnard said that headache medicine was helpful. (Tr. at 390, 592, 641). Barnard also said that new glasses minimized headaches. (Tr. at 773). She did not require aggressive treatment for headaches.

Barnard also suffered from depression and PTSD. She treated her conditions by taking psychotropic medications, which she said were helpful. (Tr. at 761). She used strategies from counseling sessions to calm herself down. *Id*. Her counselor urged her to stay active around the house. (Tr. at 692). In 2017, Barnard told her

6

doctor that she was doing pretty good with anxiety and depression. (Tr. at 698–700). At a 2019 visit with her PCP, a depression screen was negative (Tr. at 1352), and throughout 2019, Barnard presented as oriented in all spheres and she demonstrated intact judgment, insight and memory. (Tr. at 1344–1361). Barnard did not require inpatient hospitalization for mental health problems.

The ALJ found that Barnard's subjective complaints of pain and mental health symptoms were inconsistent with the record as a whole. (Tr. at 905). Barnard claims this was error.

When evaluating a claimant's subjective complaints, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "An ALJ need not explicitly discuss each factor," and he may "decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id*. (internal citations omitted).

The ALJ extensively discussed the clinical medical findings and Barnard's providers' observations. (Tr. at 904–909). He addressed the nature and location of Barnard's pain and how she treated it conservatively. *Id*. He noted improvement

with treatment. *Id*. Additionally, he mentioned that Barnard could perform a variety of daily activities, albeit with some assistance. (Tr. at 903–904). The ALJ properly explained how he considered Barnard's subjective complaints, and the finding that the complaints were inconsistent with the record as a whole was not error.[7]

## IV.  Conclusion

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly considered and discussed Barnard's subjective complaints. The finding that Barnard was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

ORDERED this 18th day of April, 2022.

_____
UNITED STATES MAGISTRATE JUDGE

---

[7] The ALJ also carefully examined the medical opinion evidence and discussed how persuasive each opinion was, giving good reasons for his conclusions. (Tr. at 907910). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1-2) (2017). *See Phillips v. Saul*, No. 1:19-CV-34-BD, 2020 WL 3451519, at *2 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*.